IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-00602-CNS-STV

RYAN JAMES GRIFFIN,

 Plaintiff,

v.

APRIL ORTIZ,
JOLENA PREACHEE,
ABDON VARGAS,
LEROY MORA,
NICHOLAS HOOVER,
MATTHEW MILLER, AND
DILLON EVANS,

 Defendants.

## ORDER

  United States Magistrate Judge Scott T. Varholak recommends that this Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 97 (Recommendation). Plaintiff objected to the Recommendation, ECF No. 101, and Defendant responded, ECF No. 113. Having reviewed the Recommendation, objection, and response, the Court overrules Plaintiff's objection and AFFIRMS and ADOPTS the Recommendation.

1

I.  **RELEVANT BACKGROUND[1] & MAGISTRATE JUDGE RECOMMENDATION[2]**

Plaintiff is a Colorado Department of Corrections (CDOC) inmate who is currently housed at the Delta Correctional Center (DCC) in Delta, Colorado. ECF No. 67. This action arises from incidents occurring while Plaintiff was incarcerated at the Colorado Territorial Correctional Facility (CTCF) in Cañon City, Colorado. ECF No. 44 (second am. prisoner compl.).

On May 30, 2023, Plaintiff was initially processed at CTCF Cell House No. 5 and was strip searched by a CTCF Officer. *Id.*, ¶¶ 8–9. Although this area is monitored by one or more security video cameras, the cameras are positioned so that they do not capture images or live feed of the strip search. *Id.*, ¶¶ 11–12.

Just over a month later, on July 1, 2023, Plaintiff was employed in the CTCF's Food Service Department clearing trays and washing dishes. *Id.*, ¶¶ 13–14. Sergeant Ramirez, a female CDOC employee, escorted Plaintiff from the kitchen to the Midway Security Building for a random strip search. *Id.*, ¶¶ 15–16. The Midway Security Building has special rooms and barriers to ensure that the strip searches are not recorded for live viewing or recording. *Id.*, ¶¶ 17–19.

On August 1, 2023, while Plaintiff was working in the CTCF's Food Service Department, he was again subjected to a random strip search. *Id.*, ¶¶ 26, 32. The strip search was "under the order, direction, and supervision" of Defendants Abdon Vargas and

---

[1] The following facts are drawn from Plaintiff's complaint, ECF No. 44, which the Court accepts as true for purposes of this order. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).
[2] On February 18, 2025, Magistrate Judge Varholak granted Plaintiff's second application for appointment of counsel. ECF No. 105. On March 10, 2025, counsel for Plaintiff entered her appearance. ECF No. 110. Because Plaintiff no longer proceeds *pro se*, the Court will not provide a *pro se* summary of its order.

2

Leroy Mora, and pursuant to a standing order of Defendant Joleena Peachee. *Id.*, ¶¶ 33–34. Rather than escorting Plaintiff to the Midway Security Building as in the past, Defendant Mora took Plaintiff and four other Food Service Department workers to the inmate restroom area of the CTCF kitchen. *Id.*, ¶¶ 41–42. This restroom does not contain security video cameras. *Id.*, ¶ 43. While the four other inmates were searched in the inmate restroom, Plaintiff was not. *Id.*, ¶¶ 43, 45. Instead, Defendant Vargas advised Defendants Mora, Matthew Miller, and Dillon Evans to strip search Plaintiff in the CTCF kitchen's utility closet adjacent to the CTCF kitchen. *Id.*, ¶ 46. When Plaintiff asked to be searched in the restroom or the Midway Security Building, Defendant Vargas told Plaintiff that the search would be conducted "as ordered" and Defendants Miller and Evans stated that those "orders" included strip searching Plaintiff in the CTCF utility closet. *Id.*, ¶¶ 47–49. Because Plaintiff feared adverse consequences—including potential administrative punishment, criminal charges, or physical punishment—Plaintiff acquiesced to the strip search. *Id.*, ¶¶ 54–57.

As he was removing his clothing, Plaintiff noticed a "black bulb" that "appeared to house a Security Video Camera installed on the ceiling." *Id.*, ¶ 58. All other strip searches Plaintiff experienced were not recorded. *Id.*, ¶ 25. Plaintiff felt physically ill and humiliated out of fear that the live feed could be seen by staff members of both genders, shared with staff members of both genders, and even accessed by inmates or placed on social media or pornographic websites. *Id.*, ¶¶ 59–64. Prior to the search, either Defendant Evans or Defendant Miller commented that they were looking forward to seeing Plaintiff's Sarah Palin tattoo, which is on Plaintiff's butt. *Id.*, ¶ 65. Defendants Evans and Miller conducted

3

a thorough strip search during which Plaintiff heard laughter from these Defendants. *Id.*, ¶¶ 66–72. For several weeks after this search, Plaintiff heard officers laugh amongst themselves and comment on Plaintiff's Sarah Palin tattoo. *Id.*, ¶ 90.

On August 2, 2023, the day after the recorded strip search, Plaintiff filed a Prison Rape Elimination Act (PREA) complaint through the CDOC's administrative process. *Id.*, ¶ 76. In the complaint, Plaintiff asserted that the recorded strip search constituted the use of excessive force, and was tantamount to sexual assault, because the CDOC regulations do not allow for the recording of a strip search. *Id.*, ¶ 77. When Plaintiff did not receive a response from the CTCF, he sent a letter to Defendant April Ortiz, CTCF's PREA Compliance Manager, expressing his concerns and requesting that all evidence of the search be preserved. *Id.*, ¶¶ 80–82. Defendant Ortiz responded that the strip search was conducted in a private location away from other offenders, that the strip search can be recorded at any time (based on the offender's actions), and that she believed the August 1 search fell within CTCF policy. *Id.*, ¶ 83. Plaintiff alleges that Defendant Ortiz's statement is inconsistent with CTCF administrative regulations which only permit the recording of a strip search during a cell extraction or where the inmate is alleged to have ingested drugs, neither of which applied to Plaintiff's August 1 search. *Id.*, ¶¶ 86–88.

After Plaintiff filed his PREA report, Defendant Mora stopped Plaintiff from attending (a) a mental health appointment, (b) a medical appointment, (c) a library visit to record the reading of a children's book to Plaintiff's daughter, (d) a law library appointment, and (e) a CDOC Case Manager appointment to discuss early release. *Id.*, 92–96. Plaintiff suspected that Defendant Mora was retaliating against Plaintiff for filing

the PREA report, and Plaintiff therefore filed grievances against Defendant Mora. *Id.*, ¶¶ 97–98.

On August 30, 2023, Defendant Mora approached Plaintiff during Plaintiff's kitchen shift and ordered Plaintiff to turn around so that Defendant Mora could place Plaintiff in handcuffs and have Plaintiff strip searched. *Id.*, ¶¶ 100–01, 107. Because Defendant Mora had been involved in the August 1 strip search, Defendant Mora's order for Plaintiff to "cuff up" triggered Plaintiff's post-traumatic stress disorder (PTSD) from the August 1 search. *Id.*, ¶¶ 103–08. Defendant Mora grew impatient and threatened to mace Plaintiff. *Id.*, ¶ 109. Plaintiff quickly finished undressing and got on his stomach with his hands behind his back. *Id.*, ¶¶ 110–11. Sergeant Quintana, a female sergeant present at the time, hit an emergency button, after which Defendant Mora handcuffed Plaintiff. *Id.*, ¶¶ 114–15.

Defendant Mora escorted Plaintiff to another area of CTCF and Sergeant McFall conducted a complete strip search while wearing a body camera. *Id.*, ¶¶ 115–16. Following the strip search, Plaintiff was taken to administrative segregation for five or six days of solitary confinement. *Id.*, ¶ 117. Plaintiff was ultimately charged with "advocating or creating facility disruption," causing the Boulder Community Treatment Center to deny Plaintiff's application for community confinement. *Id.*, ¶¶ 122–23. Following the August 30 incident, on February 29, 2024, Plaintiff filed a second PREA report with an outside PREA reporting agency in Olympia, Washington. *Id.*, ¶ 124.

On March 5, 2024, another CTCF inmate, Nicholas Aurelio, told Plaintiff that he had been invited by a CTCF correctional officer to watch a recording of Plaintiff's August

5

30 strip search. *Id.*, ¶ 125 (citing Aurelio Decl.). According to Mr. Aurelio, this correctional officer showed the entire strip search to Mr. Aurelio and several other inmates. *Id.*, ¶ 126. "On information and belief," the correctional officer who showed this footage was Defendant Nicholas Hoover, the correctional officer who provides security in the CTCF medical building. *Id.*, ¶ 129. "On information and belief, on August 30, 2023, and for weeks or months thereafter, Defendant Hoover invited CTCF staff members[,] medical contractors [and inmates] to view the August 30, 2023 security camera footage of the . . . strip search." *Id.*, ¶¶ 302–03. Upon learning of Defendant Hoover's sharing of the video, Plaintiff filed a third PREA report with the PREA reporting office in Olympia, Washington. *Id.*, ¶ 130.

According to Plaintiff, CTCF did not conduct a fair and balanced investigation into his August 1, 2023 recorded strip search. *Id.*, ¶¶ 175–81. Specifically, Plaintiff maintains that CTCF officials, including Defendants Ortiz and Vargas, did not interview inmates who witnessed the incident. *Id.*, ¶¶ 175–81; 214–17, 260–63. And, Plaintiff alleges that Defendant Hoover cancelled two inmates' medical visits upon learning that they were assisting Plaintiff with his investigation. *Id.*, ¶¶ 304–05.

As a result of Defendants' actions, Plaintiff alleges that he continues to suffer from PTSD and other psychological and physical symptoms, including fear of lights and noises, correctional officers, showers, and small rooms. *Id.*, ¶¶ 134–35. Plaintiff has intermittent lack of appetite, uncontrollable sobbing, insomnia and panic attacks. *Id.*, ¶¶ 135–36. Plaintiff remains chronically ill and experiences migraines, lower back pain, gastrointestinal upset, and a lower leg infection that will not heal. *Id.*, ¶¶ 137–41. Plaintiff's

6

physical and emotional issues have been exasperated by Defendant Mora's actions in refusing Plaintiff access to mental health care and medical treatment for Plaintiff's leg injury. *Id.*, ¶ 141.

On January 24, 2024, CDOC moved Plaintiff from CTCF to St. Thomas-More Hospital for emergency treatment to remove a steel rod from his left shin bone. *Id.*, ¶ 142. The infection in Plaintiff's leg "had become septic after nearly 6 months of PTSD trauma." *Id.* Plaintiff underwent a three-hour surgery to remove the steel rod and treat the infection in Plaintiff's leg. *Id.*, ¶ 143. Plaintiff spent three days in the hospital before being transferred back to CTCF. *Id.*, ¶¶ 144–45. Plaintiff remained in the CTCF infirmary for approximately three weeks, "receiving sub-standard medical care." *Id.*, ¶ 146. Plaintiff continues to suffer chronic and debilitating pain in his leg, and he walks with a pronounced limp and the occasional use of a walker. *Id.*, ¶ 147.

Plaintiff asserts that he "learned from another inmate that the CTCF has a pattern and practice of subjecting Hispanic/Catholic inmates (like [Plaintiff]) to recorded strip searches in the CTCF kitchen utility closet." *Id.*, ¶ 150. He further alleges that CTCF has a pattern and practice of not following PREA and retaliating against inmates who avail themselves of PREA's protections. *Id.*, ¶¶ 151–52. Plaintiff provides an example of another inmate who filed a grievance asserting that he was strip searched in the CTCF kitchen without reasonable or individualized suspicion. *Id.*, ¶¶ 153–62. That inmate filed a PREA complaint and maintains that, after he filed that complaint, the video recording of his strip search was deleted. *Id.*, ¶¶ 163–67. Once the PREA investigation was completed,

7

the inmate was moved to the Sterling Correctional Facility (SCF), allegedly in retaliation for filing the PREA complaint. *Id.*, ¶¶ 168–70.

Plaintiff initiated this action on March 4, 2024. ECF No. 1. Plaintiff's operative second amended complaint asserts three causes of action, all brought under 42 U.S.C. § 1983: (1) retaliation, in violation of the First Amendment; (2) unreasonable search, in violation of the Fourth Amendment; and (3) "excessive force/sexual assault/cruel and unusual Punishment," in violation of the Eighth Amendment. ECF No. 44 at 3, 29–30. Plaintiff seeks compensatory, exemplary, and punitive damages, as well as declaratory and injunctive relief. *Id.* at 30.

On July 25, 2024, Defendants moved to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 52. Defendants argued that Plaintiff's complaint failed to state a claim under each of Plaintiff's theories of injury, that damages are barred under the Prison Litigation Reform Act (PLRA), and that Defendants are entitled to qualified immunity. *Id.* This Court referred Defendant's motion to dismiss to Magistrate Judge Varholak for initial determination. ECF No. 53.

On January 6, 2025, Magistrate Judge Varholak issued his Recommendation, determining that the motion should be granted in part and denied in part. ECF No. 97. He recommends dismissing (1) Plaintiff's First Amendment retaliation claim against Defendants Evans, Hoover, Miller, Ortiz, Peachee, and Vargas; (2) Plaintiff's Fourth Amendment claim against Defendants Evans, Mora, Miller, Ortiz, Peachee, and Vargas; and (3) Plaintiff's Eighth Amendment claim against all Defendants. However, he recommends denying Defendants' request to dismiss (4) Plaintiff's First Amendment

retaliation claim against Defendant Mora; (5) Plaintiff's Fourth Amendment claim against Defendant Hoover; and (6) Plaintiff's claim for compensatory damages.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss Plaintiff's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 52 at 1. A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." The dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must take all the factual allegations in the complaint as true and "view these allegations in the light most favorable" to the nonmoving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). On a Rule 12(b)(6) motion, a court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the [] complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id*. at 1110 n.3. The

court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### B. Federal Rule of Civil Procedure 72(b)(3)

When a magistrate judge issues a recommendation on a dispositive matter, the presiding district judge must "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. 72(b)(3). An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id*. at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. ANALYSIS

Plaintiff objects to Magistrate Judge Varholak's Recommendation to dismiss his Fourth and Eighth Amendment claims against certain Defendants. ECF No. 101 at 4–8.[3] The Court addresses the objections in turn, concluding that none of them compel the Court to reject or modify the Recommendation.

---

[3] Plaintiff does not object to Magistrate Judge Varholak's determination that his First Amendment retaliation claim against Defendants Evans, Hoover, Miller, Ortiz, Peachee, and Vargas should be dismissed.

### A. Plaintiff's Objection to Magistrate Judge Varholak's Fourth Amendment Determination

Plaintiff's second claim for relief concerns the August 1 and 30, 2023 strip searches, and the sharing of the August 30, 2023 recording with other inmates. He brings a Fourth Amendment unreasonable search claim. ECF No. 44 at 29. To plead a constitutional violation, Plaintiff must plausibly allege that the strip searches were not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Magistrate Judge Varholak correctly determined that intrusive strip searches generally do not rise to Constitutional violations—especially where the inmate, like Plaintiff, worked in a facility kitchen with access to sharp items. ECF No. 97 at 17; *see also Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979) (upholding policy requiring inmates "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution"); *Maryland v. King*, 569 U.S. 435, 462 (2013) ("A search of the detainee's person when he is booked into custody may involve a relatively extensive exploration including requiring at least some detainees to lift their genitals or cough in a squatting position." (quotations and citations omitted)).

Nor does the mere recording of a prison strip search, without more, rise to the level of a Constitutional violation. *Jones v. City & Cnty. of Denver*, No. 21-CV-00728-RMR-NRN, 2022 WL 20380587, at *6 (D. Colo. Apr. 12) (collecting cases), *report and recommendation adopted*, No. 21-CV-0728-RMR-NRN, 2022 WL 20380589 (D. Colo. May 2, 2022).

Because the only allegations made against Defendants Evans, Mora, Miller, Ortiz, Peachee, and Vargas are based on the nature of the strip searches or the fact that they were recorded, the Court agrees with Magistrate Judge Varholak that Plaintiff has failed to plausibly allege a Fourth Amendment claim against these Defendants.[4]

Plaintiff argues that his Fourth Amendment claim against Defendants Ortiz, Peachee, Vargas, and Mora should not be dismissed because they enabled Defendant Hoover's alleged sharing of Plaintiff's August 30 strip search. ECF No. 101 at 6. According to Plaintiff, these Defendants "ratified" a different abusive and recorded strip search in 2022, which somehow empowered Defendant Hoover to share Plaintiff's strip-search video with other inmates. *Id.* Upon de novo review, the Court finds that Plaintiff's objection does not warrant modification of the Recommendation.

To start, Plaintiff does not allege in his complaint or argue in his objection that any correctional officer shared the recording of the 2022 strip search with other inmates. The Court thus fails to see how merely *recording* a different strip search would empower Defendant Hoover to *share* Plaintiff's strip-search recording. Moreover, Plaintiff does not allege that anyone except Defendant Hoover was involved in sharing or showing a video of his August 30, 2023 strip search. ECF No. 44, ¶ 129 ("On information and belief, Correctional Officer (Defendant) Hoover, who provides security in the CTCF Medical/Infirmary building, maliciously and sadistically shared the August 30, 2023 dish pit strip search with inmate Porters working under his supervision."). He also does

---

[4] Magistrate Judge Varholak recommends denying the motion to dismiss as to Defendant Hoover, as he could "discern no legitimate penological reason for Defendant Hoover's sharing of the strip search video with other inmates and staff." ECF No. 97 at 19. No party objects to this finding.

12

not raise this argument in his response to Defendants' motion to dismiss, *see* ECF No. 91, so raising new arguments in an objection not previously raised is improper. *Parks v. Persels & Assocs., LLC*, 509 B.R. 345, 357 (D. Kan. 2014) ("Generally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." (quoting *Grant v. Bradt*, 2012 WL 3764548, at *4 (S.D.N.Y. 2012 (internal quotation marks and citation omitted))).

The Court also agrees with Defendants that Plaintiff fails to recognize that § 1983 claims require personal involvement by a correctional officer. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Because Defendants Evans, Mora, Miller, Ortiz, Peachee, and Vargas did not have personal involvement in the sharing of Plaintiff's strip-search recording, Plaintiff's Fourth Amendment claims against these Defendants fail.

The Court has conducted a de novo review of Magistrate Judge Varholak's analysis of Plaintiff's Fourth Amendment claim and concludes that his determination is correct. Accordingly, the Court overrules Plaintiff's objections. Plaintiff's Fourth Amendment claim against Defendants Evans, Mora, Miller, Ortiz, Peachee, and Vargas are dismissed, but his Fourth Amendment claim against Defendant Hoover remains.

### B. Plaintiff's Objection to Magistrate Judge Varholak's Eighth Amendment Determination

Plaintiff's third claim for relief concerns is for "excessive force/sexual assault/cruel and unusual Punishment." ECF No. 44 at 29–30. The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Ordinarily, an excessive force claim involves two prongs. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). The "objective prong . . . asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). The subjective prong requires "the plaintiff [to] show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original). The Tenth Circuit has held that, to constitute an Eighth Amendment violation, a strip search must be conducted in an abusive fashion or with unnecessary force. *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (rejecting the plaintiff's contention that his body cavity search constituted cruel and unusual punishment).

Magistrate Judge Varholak analyzed to two alleged intrusive searches and correctly determined that the Supreme Court has upheld the legality of similar searches. ECF No. 97 at 22. The searches themselves were not abusive or did not involve the unnecessary use of force. *Id.* Although he determined that Plaintiff's allegations against Defendant Hoover plausibly allege a Fourth Amendment violation, Defendant Hoover was not involved in the strip searches, and Plaintiff does not allege that Defendant Hoover

14

applied any force to Plaintiff. *Id.* Having conduct a de novo review, the Court agrees with Magistrate Judge Varholak that Plaintiff's Eighth Amendment claim fails.

Plaintiff first argues that Magistrate Judge Varholak's

> proposed findings that Plaintiff was not subject to cruel and unusual punishment [SEE: *Ruiz v. Estelle,* 679 F.2d 1115,*1149 1982 U.S. App. LEXIS 18042, 10 Fed. R. Evid. Serv. (Callaghan) 1483 (5th Cir. Tex. June 23, 1982) as a result of the recorded strip searches and subsequent retaliation *[Mackey]* does not comport with the alleged facts, nor established case law.

ECF No. 101 at 4–5. This vague objection does not trigger de novo review. *2121 East 30th St.*, 73 F.3d at 1060 (holding that a "party's objections to the magistrate judge's report and recommendation must be . . . specific to preserve an issue for de novo review by the district court"). He fails to argue how these cases require modification or rejection of the Recommendation. Nor does he point to specific facts that Magistrate Judge Varholak apparently ignored, other than his theory that Defendants Ortiz, Peachee, Vargas, and Mora had knowledge of the 2022 strip-search recording of a different inmate, ECF No. 101 at 5—an argument the Court has already rejected.

Plaintiff also improperly expands his Eighth Amendment theory of liability by combining the alleged impacts of his claimed First and Fourth Amendment violations:

> Here, it is plausible that expert testimony at trial would establish that the trauma of the strip searches, coupled with the subsequent retaliation, compounded by the deliberate interference with medical care/physical therapy as a form of retaliation *[Ruiz* *1149, 1152-53]*, and undue stresses causes by the humiliation *[Calhoun* *938]* of the public showing of his nudity adversely affected Plaintiff's ability to fight the infection on his shin. If so, the pain and suffering Plaintiff experienced goes far beyond headaches and humiliation . . . it rises to the level of cruel and unusual punishment and potential punitive

15

damages. [RE: *Mackey, Hutchins* \*197; *Ruiz*][.]

*Id.* at 6–7. This objection fails as well. Although Plaintiff clearly alleges emotional pain and suffering, those allegations stem from the recording of Plaintiff's strip searches and relate almost exclusively to his First and Fourth Amendment claims—claims that remain viable against certain Defendants. Plaintiff's Eighth Amendment claim for "excessive force/sexual assault/cruel and unusual punishment" relate to the nature of the strip searches. ECF No. 44 at 29–30.

Upon de novo review, the Court agrees that Plaintiff has failed to plausibly allege an Eighth Amendment excessive force claim against any of the Defendants.

## IV.  CONCLUSION

Consistent with the above analysis, the Court ORDERS as follows:

(1) The Court overrules Plaintiff's objection and AFFIRMS and ADOPTS Magistrate Judge Varholak's Recommendation, ECF No. 97, in its entirety as an order of this Court.

(2) Defendants' motion to dismiss, ECF No. 52, is GRANTED IN PART and DENIED IN PART as follows:

   a. GRANTED to the extent that it seeks to dismiss Plaintiff's First Amendment retaliation claim against Defendants Evans, Hoover, Miller, Ortiz, Peachee, and Vargas, but DENIED to the extent that it seeks to dismiss Plaintiff's First Amendment retaliation claim against Defendant Mora;

   b. GRANTED to the extent that it seeks to dismiss Plaintiff's Fourth Amendment claim against Defendants Evans, Mora, Miller, Ortiz, Peachee, and Vargas, but DENIED to the extent that it seeks to dismiss Plaintiff's Fourth Amendment claim against Defendant Hoover;

   c. GRANTED to the extent that it seeks to dismiss Plaintiff's Eighth Amendment claim against all Defendants; and

    d. DENIED to the extent that it seeks to dismiss Plaintiff's claim for compensatory damages.

(3) Plaintiff's First Amendment claim against Defendant Mora, and Plaintiff's Fourth Amendment claims against Defendant Hoover, remain viable.

DATED this 27th day of March 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge